UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Yolanda Lott,

          Plaintiff,      Case No. 20-cv-11727

v.

                              Judith E. Levy
                              United States District Judge
Commissioner Social Security,

                              Mag. Judge Patricia T. Morris
         Defendant.

_____/

**ORDER ADOPTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [22], GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [16], DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19], AND REMANDING CASE FOR REHEARING**

On May 17, 2021, Magistrate Judge Patricia T. Morris issued a Report and Recommendation ("R&R") recommending that the Court deny Plaintiff's motion for summary judgment (ECF No. 16), grant Defendant's motion for summary judgment (ECF No. 19), and affirm the Commissioner's decision to deny Plaintiff benefits under the Social Security Act. (ECF No. 11-2.)

On July 6, 2021, Plaintiff filed three objections to the R&R under Federal Rule of Civil Procedure 72(b)(2) and Eastern District of Michigan

Local Rule 72(d).[1] (ECF No. 25.) She argues that the Magistrate Judge erred by (1) finding that the ALJ's non-disability finding was supported by substantial evidence in the record, (2) dismissing her argument regarding the probative value of her work history, and (3) affirming the ALJ's finding that her headaches were not a severe impairment.

For the reasons set forth below, the Court ADOPTS IN PART the R&R, GRANTS objection 1, OVERRULES objections 2 and 3, and REMANDS the case to the ALJ for rehearing.

## I. Background

The Court adopts by reference the background set forth in the R&R, having reviewed it and found it to be accurate and thorough. (ECF No. 22, PageID.1160–1171.) Supplemental factual background relevant to Plaintiff's objections is provided in further detail below.

## II. Legal Standard

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. 28 U.S.C. §

---

[1] Plaintiff, who is proceeding *pro se* with limited legal assistance from a clinic, filed her objections four days late. Defendant does not raise the issue. The deadline for filing objections is not jurisdictional. *E.g.*, *Kent v. Johnson*, 821 F.2d 1220, 1222-23 (6th Cir. 1987); *Patterson v. Mintzes*, 717 F.2d 284, 286 (6th Cir. 1983). The Court therefore declines to address the issue *sua sponte*.

636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Group LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate arguments already presented to the magistrate judge are improper, *Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that dispute the general correctness of the report and recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, Plaintiff's objections must be clear and specific enough that the Court can squarely address them on the merits. *See Pearce*, 893 F. 3d at 346.

3

The Supreme Court articulated the standard the district court must apply when conducting its de novo review. In *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), the Court explained that the phrase "substantial evidence" is a "term of art." *Id.* (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotations omitted). On review, the Court is to accord the ALJ's determinations of credibility "considerable deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 242 (6th Cir. 2002)).

### III. Analysis

**A. Objection No. 1**

Plaintiff first argues that the Magistrate Judge improperly failed to consider the totality of the record, including retrospective evidence, when she affirmed the ALJ's conclusion that Plaintiff's hypertrophic

4

cardiomyopathy symptoms were not as intense as Plaintiff claimed.[2] (ECF No. 25, PageID.1204.) Defendant urges the Court to reject this objection out of hand as improper. (ECF No. 26, PageID.1214.)

While Plaintiff's objection relies heavily on facts also argued in her summary judgment motion, it is formulated with sufficient clarity to "discern the issues that are contentious." *Miller*, 50 F.3d at 380. Indeed, the objection is plain. The Magistrate Judge examined the events Plaintiff argues demonstrate the seriousness of her heart condition and found that Plaintiff's "argument lacks any reference to medical record evidence that connects these events in any way." (ECF No. 22, PageID.1183.) Plaintiff objects by explaining their connection. (ECF No. 25, PageID.1201-1203.) Plaintiffs are not prohibited from revisiting prior arguments so long as they cogently object to the Magistrate Judge's treatment of those arguments. *See Pearce v. Chrysler Group LLC Pension Plan,* 893 F.3d 339, 346 (6th Cir. 2018). The objection is proper.

Plaintiff claims she is unable to work due in significant part to debilitating hypertrophic cardiomyopathy symptoms. She testified that

---

[2] Hypertrophic cardiomyopathy is a cardiac condition that causes thickening (hypertrophy) of the heart muscle. Symptoms include shortness of breath, chest pain, fainting, palpitations, and swelling. *See, e.g.* Johns Hopkins Medicine, *Hypertrophic Cardiomyopathy*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/hypertrophic-cardiomyopathy.

5

prior to the alleged date of onset (December 2, 2013), her symptoms progressively worsened to the point where she could no longer climb the stairs in her house, had to move her bedroom downstairs so that she could go to the bathroom at night, and needed her daughter's assistance with basic household chores. (ECF No. 11-2, PageID.71-72, PageID.76.) The ALJ discredited this portion of her testimony, finding that "the medical records prior to the date last insured do not reflect the degree of disabling symptoms the claimant alleges." (ECF No. 11-2, PageID.57.) As a result, the ALJ concluded, "the evidence prior to the date last insured is not fully consistent with a finding of disability." (*Id.*)

According to Plaintiff, the ALJ's decision to discredit her testimony regarding the severity of her symptoms was erroneous because it failed to consider the entirety of the medical record, including retrospective evidence from after the relevant period.[3] Plaintiff alleges a full consideration of that evidence mandates the conclusion that she had a "chronic long-term impairment" consistent with the symptoms as she

---

[3] Defendant argues that Plaintiff did not challenge the ALJ's treatment of her hearing testimony and that this argument is therefore waived. (ECF No. 19, PageID.1133.) But Plaintiff did explicitly challenge the ALJ's conclusion that "the medical records prior to the date last insured do not reflect the degree of disabling symptoms that the claimant alleges." (e.g., ECF No. 16, PageID.1099, PageID.1109.) The argument is therefore not waived.

6

described them. (ECF No. 25, PageID.1203.) Thus, Plaintiff argues, her 2001 alcohol ablation,[4] 2013 syncopal episode (fainting), 2016 abnormal EKG and 2018 stroke, considered together, show that she suffered from a chronic cardiac impairment that progressively worsened. (ECF No. 25, PageID.1202-04.) Moreover, Plaintiff argues, the ALJ's conclusion that her episode of syncope was an "isolated" incident is unsupportable because it is inconsistent with this lengthy medical record. (ECF No. 25, PageID.1204.)

The Magistrate Judge rejected this argument because there was no direct evidence in the record of Plaintiff's cardiac symptoms prior to 2013, there was also no evidence that her syncopal event was related to her hypertrophic cardiomyopathy, and because there was no evidence linking her 2001 treatment and 2018 stroke. (ECF No. 22, PageID.1183.)

Plaintiff correctly points out that the medical record does link these events. It is clear that Plaintiff underwent her alcohol ablation procedure

---

[4] The ALJ erroneously referred to the alcohol ablation as occurring in 2009 rather than in 2001. (ECF No. 11-2, PageID.56.) This is likely because some pages in the medical record contain a summary of a 07/29/2009 medical visit, which in turn refers to the 11/01 alcohol ablation. The record is easily misread to suggest that the ablation itself occurred in '09. (ECF No. 11-7, PageID.315.) As the less ambiguous record pages show, however, it occurred in 2001. (*E.g.* ECF No. 11-7, PageID.303.) Plaintiff herself also confirms that the correct date was 2001. (ECF No. 16, PageID.1092). The discrepancy is not dispositive on any issue and is only noted here to clarify the record.

7

specifically to treat her hypertrophic cardiomyopathy. (*See, e.g.*, ECF No. 11-7, PageID.315, PageID.319, PageID.334, PageID.336). In 2009, Plaintiff was evaluated again. The EKG taken during that visit was abnormal and confirmed her hypertrophic cardiomyopathy. (*Id.* PageID.314.) In 2011, Plaintiff again sought treatment, and underwent a cardiac catheterization as part of an evaluation for coronary artery disease. *Id.*

Plaintiff worked for several more years after these interventions, until the alleged date of onset, when she suddenly fainted while in a movie theatre. At the hospital, Plaintiff additionally complained of lightheadedness, dizziness, palpitations, chest pain with a significant exertional component, and shortness of breath. (ECF No. 11-7, PageID.246-48.) Evaluating physicians noted that her loss of consciousness "likely represent[ed] convulsive syncope…[with] underlying cardiac etiology." (*Id.* at PageID.250; *see also* PageID.256 (seizure "likely due to cardiac event"), PageID.259-260 ("it is likely that the evolving cardiac event interrupted blood flow to a sufficient degree to the cerebrum to cause syncope, and a subsequent seizure.")) A later "progress note" described the link even more definitively: "[t]he patient

8

was found to have a non-ST segment myocardial infarction upon admission…[and] has a longstanding history of hypertrophic cardiomyopathy." (ECF No. 11-7, PageID.259.) Plaintiff's EKG was again abnormal, and her left ventricular cavity was found to be "prominent," and "slightly larger on post stress, than at rest." (ECF No. 11-7, PageID.303.) Later summaries conclude that these studies showed "severe LVH [left ventricular hypertrophy] consistent with her known diagnosis of hypertrophic arthropathy." (*e.g. id.* at PageID.319.)

Plaintiff subsequently went to the hospital four times in 2014 for follow-up appointments regarding her cardiac conditions. During those appointments, she repeatedly complained of lightheadedness, shortness of breath, chest pain, and dizziness. (ECF No. 11-7, PageId.314, PageID.319.) In 2016, she followed up again, complaining about severe shortness of breath. (ECF No. 11-7, PageID.377.) Some months later, a cardiology follow-up again confirmed her cardiomyopathy and again detected left ventricular hypertrophy (*Id.*, PageID.385.) In 2017, Plaintiff sought care because of palpitations. (ECF No. 11-11, PageID.918.) An echocardiogram done at that time again showed "moderate to severe concentric LVH." (*Id.*)

In June of 2018, Plaintiff had a stroke. (ECF No. 11-10, PageID.734.) She experienced severe chest pain and her blood pressure was extremely elevated. (*Id.* PageID.742.) Tests performed during a follow-up cardiology visit were "consistent with patient's history of hypertrophic cardiomyopathy." (*Id.*, PageID.753.) In September of the same year, Plaintiff was hospitalized for "acute decompensated heart failure." (*E.g.*, ECF No. 11-9, PageID.579). At the hospital, they found atrial flutters and arrythmias sufficiently concerning to require intervention through cardioversion. (*See id., see also* PageID.591, PageID.592, PageID.595). Plaintiff also complained of severe shortness of breath. (*Id.* PageID.603.)

In the face of this extensive record of Plaintiff's chronic cardiac condition, the Court does not agree that Plaintiff has presented "no evidence" linking her 2001 ablation to her syncopal episode, stroke, and other cardiac events. The Court therefore grants Plaintiff's first objection and declines to adopt Section G (1) of the R&R (ECF No. 22, PageID.1182-85.)

To secure a reversal of the ALJ's decision on this point, Plaintiff must still establish either that it was not supported by substantial

10

evidence on the record (*Biestek*, 139 S. Ct. at 1154), or that the ALJ failed to follow regulations in a way that prejudiced her (*Bowen*, 478 F.3d at 746). Because two important aspects of the ALJ's decision are not supported by substantial evidence in the record, a "sentence four" remand for rehearing under 42 U.S.C. §405(g) is warranted. *Faucher v. Sec'y of Health and Human Serv's*, 17 F.3d 171, 175 (6th Cir.1994).[5]

First, the ALJ's finding that Plaintiff's 2013 syncopal episode was an "isolated" incident (ECF No. 11-2, PageID.54, PageID.55) is unsupported by the record. Plaintiff's syncope was accompanied by virtually every symptom characteristic of hypertrophic cardiomyopathy, and it was repeatedly diagnosed as cardiac in origin. The ALJ cites to a single page of the record where a physician uses the word "possible" to refer to the cardiac etiology of Plaintiff's syncope. (ECF No. 11-2, PageID.56.) In the face of much more detailed and uncontradicted medical information diagnosing the syncope as cardiac in origin, this turn of phrase alone does not constitute "substantial" evidence of the ALJ's

---

[5] Plaintiff asks for immediate award of benefits, but that is appropriate only "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Nowicki v. Comm'r of Soc. Sec.*, 2019 WL 5680356 at *13, (E.D. Mich., March 27, 2019) (quoting *Faucher v. Sec'y of Health and Human Serv.*, 17 F.3d 171, 176 (6th Cir. 1994)). As this section makes clear, this is not such a case.

11

conclusion. While there is ambiguity in the record about the seriousness of the syncopal event, there is no serious question that it was related to her cardiac condition.

Second, the ALJ's finding that the record is inconsistent with the disabling symptoms as Plaintiff reported them is unsupported by substantial evidence in the record taken as a whole. The Sixth Circuit has explained that in evaluating a claimant's credibility, an ALJ:

> must make a determination of the credibility of the claimant in connection with his or her complaints based on a consideration of the entire case record. The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence obtained in the record. Consistency of the various pieces of information contained in the record should be scrutinized.

*Cox v. Comm'r of Soc. Sec.*, 615 F.App'x 254, 259 (6th Cir. 2015) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007)).

The ALJ discredited the symptoms Plaintiff reported and testified to because (1) "there is no indication that she sought evaluation or treatment" for her cardiac symptoms after her 2013 hospitalization, suggesting "that they were not so frequent or bothersome in severity as to disable her from working," (2) she denied other cardiac symptoms during her hospitalization, (3) she complained of only mild symptoms

12

during her initial follow-up visits, and (4) "overall, her description of symptoms and complaints as documented in the medical records" suggests that her symptoms were less severe than Plaintiff suggested. (ECF No. 11-2, PageID.57.)

The first finding is irreconcilable with this record. It contains hundreds of pages describing Plaintiff's repeated follow-up visits. (ECF No. 11-7, 11-8, 11-9, 11-10, 11-11.) As recounted above, Plaintiff consistently sought and received care for her cardiac condition both before, during, and after the relevant period.

The second finding—that Plaintiff did not complain of other cardiac symptoms during the 2013 hospitalization—is problematic. As detailed above, Plaintiff *did* discuss her cardiac symptoms, including shortness of breath, dizziness, palpitations, and chest tightness during her hospital visit. (ECF No. 11-7, PageID.246-48.) She explained that these symptoms occurred when she exerted herself, such as while talking or climbing the stairs. *Id.* That is precisely what she also testified to before the ALJ. (ECF No. 11-2, PageID.71-72, PageID.76.) The fact that Plaintiff experienced only mild cardiac symptoms (chest discomfort and lightheadedness)

13

while sedentary in a hospital bed is no evidence at all to suggest this evidence is not credible.

The ALJ's third finding—that Plaintiff complained of only mild symptoms during her 2014 follow-ups—is plainly incorrect. According to the ALJ, she "reported only mild, intermittent dizziness" during the first of these appointments, suggesting she did not have the more severe symptoms to which she testified (ECF No. 11-2, PageID.56.) But the record shows that, at her January 2014 appointment, Plaintiff also complained of "chest tightness and dyspnea [shortness of breath] at rest" which could "last for hours." (ECF No. 11-7, PageID.319.) When she returned to the cardiologist in July of 2014, she complained of edema, "chest pain with stairs" and said she was "short of breath with talking and with exertion." (ECF No. 11-7, PageId.314.) The ALJ's discussion of this appointment also omits all mention of these symptoms (ECF No. 11-2, PageID.56.) Plaintiff's follow-up appointments support, rather than discredit, her testimony about shortness of breath and chest pain.

For the same reasons, the ALJ's remark that Plaintiff's description of symptoms is inconsistent with the complaints documented in the record is also inaccurate.

14

Defendant argues that the ALJ nevertheless properly relied on the medical opinion of State Agency consultant Thomas Flake. (ECF No. 19, PageID.1130.) Dr. Flake submitted an opinion which is consistent with the RFC adopted by the ALJ. The ALJ's discussion of this opinion is limited to one sentence, which describes it as "persuasive" because "supported by and consistent with the medical evidence as of the last date insured." (ECF No. 11-2, PageID.58.) However, the opinion incomprehensibly fails to list even a single of Plaintiff's cardiac symptoms. (ECF No. 11-3, PageID.88) (including only weakness and fatigue under "List the claimant's symptoms.") It is therefore not at all consistent with the remainder of the medical evidence—a fact the ALJ would have to address in order to discount Plaintiff's reported symptoms on the basis of this report alone.

Defendant further claims that "largely normal examination findings" and "largely normal Holter monitoring" after the December 2013 hospitalization support the ALJ's finding of non-disability. (ECF No. 19, PageID.1133.) It should be clear from the above that Plaintiff's cardiac examinations did not result in "largely normal" findings. It is true that additional heart-monitoring done in 2014, including with a Holter

15

monitor, and with a month-long event-monitor, did not detect significant arrhythmias. (ECF No. 11-7, PageID.314.) But these findings are not inconsistent with either Plaintiff's cardiac diagnosis—pathological thickening of the heart muscle—or her reported symptoms. To the contrary, the same document also reports "LVH" and describes the results as "consistent with her HCM." *Id*. The ALJ's reference to these studies accordingly does not provide support for her finding that Plaintiff did not experience the reported symptoms.

The inadequacy of the ALJ's reasons for discrediting Plaintiff's testimony and the major inconsistency between the Agency consultant's opinion and the remainder of the evidence warrant remanding this case. As the vocational expert's testimony demonstrates, the ALJ's errors were not harmless. When the ALJ incorporated Plaintiff's reported cardiac symptoms into a hypothetical and asked: "if an individual needed to take several unscheduled breaks throughout the day for periods of at least ten to 15 minutes at a time, would that affect the ability to perform the jobs you've listed?" the expert responded that this would preclude "all competitive work." (ECF No. 11-2, PageID.80.) This suggests that a

16

proper consideration of Plaintiff's reported symptoms would have resulted in a finding of disability.

While the Court will not replace its judgment for that of the Commissioner, a remand for rehearing is appropriate in these circumstances. On remand, the ALJ must re-examine Plaintiff's alleged symptoms based on consideration of the record as a whole. *Cox*, 615 F.App'x at 259.

### B. Objection 2

Plaintiff next objects to the R&R because the Magistrate Judge held that *White v. Comm'r*, 312 F.App'x 779, 789 (6th Cir. 2009) is no longer good law. *White* relied on SSR 96-7p, which has been replaced with SSR 16-3p. SSR 16-3p, 2017 WL 5180304. Plaintiff in turn relied on *White* to argue that the ALJ should have considered her excellent work history before determining that the symptoms to which she testified were not consistent with the evidence. (ECF No. 25, PageID.1204-05.)

It is true, as Plaintiff points out, that "many courts have recognized that SSR 16-3 changes little of substance and instead tinkers with semantics." *Gilliam v. Comm'r of Soc. Sec.*, 2019 WL 6112969, *10 (E.D. Mich., July 10, 2019) (collecting cases). In general, "prior caselaw

17

consequently remains valid." *Id.* Nevertheless, the Magistrate Judge correctly held that the particular way in which Plaintiff asks that her work history be considered is no longer appropriate. That is because Plaintiff submits her work history as evidence of a generally good character, bolstering her credibility, rather than as evidence relevant to the consistency of her alleged symptoms with the rest of the record. It is precisely that kind of use of evidence that SSR 16-3p no longer permits. The purpose of the Commissioner's new ruling was to "clarify that subjective symptom evaluation *is not an examination of an individual's character.*" SSR 16-3p, 2017 WL 5180304, at *2 (emphasis added).

As *Gilliam* itself held, an ALJ could not consider a claimant's work history to determine that she was "lazy" and therefore not credible. *Id.* at *11 (quoting *O'Ryan v. Berryhill*, 2018 WL 1181601, at *4 (W.D. Wash. Mar. 7, 2018)). Just as work history can no longer be used to impugn a claimant's character (suggesting she is likely lying), so too can it no longer be used to suggest that a claimant is highly reliable (suggesting she is likely to be telling the truth.) Accordingly, the ALJ's failure to consider the claimant's work history as supportive of her testimony is not reversible error and Plaintiff's second objection is overruled.

18

**C. Objection 3**

Plaintiff's final objection concerns the Magistrate Judge and ALJ's treatment of her headaches as merely "mild" rather than "severe" impairments, at step two of the disability analysis. (ECF No. 25, PageID.1207.)

Although the record contains significantly more evidence of severe migraines than the ALJ acknowledged, the Sixth Circuit has repeatedly held that the fact "that some of a claimant's impairments were not deemed to be severe at step two is legally irrelevant." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F.App'x 451, 457 (6th Cir. 2008)) (cleaned up). Where, as here, the ALJ relied on both severe and non-severe impairments to craft an RFC, an erroneous finding of non-severity is harmless error and cannot be the basis for a reversal. *Id. See also Maziarz v. Sec'y of Health & Human Serv's.*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ did consider Plaintiff's non-severe impairments while making her disability finding (ECF No. 11-2, PageID.56).

Accordingly, the ALJ's treatment of Plaintiff's headaches does not provide a separate basis for reversal and objection 3 is overruled.

## IV. Conclusion

For the reasons set forth above, the Court ADOPTS IN PART the Magistrate Judge's R&R. (ECF No. 22). Plaintiff's motion for summary judgment is GRANTED (ECF No. 16), Defendant's motion for summary judgment is DENIED, (ECF No. 19), the Commissioner's finding of non-disability is REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

Dated: September 30, 2021       s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                                         United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2021.

                                         s/William Barkholz
                                         Case Manager